## In re NORTHERN MARBLE CORPORATION.

### In re COLONIAL MARBLE CO., Inc.
#### Nos. 1219, 1235.

District Court, D. Delaware.
July 30, 1943.

Ivan Culbertson, of Wilmington, Del., pro se and as attorney for the trustee in reorganization.

Collins J. Seitz, of Wilmington, Del., for trustee in bankruptcy.

Herbert H. Ward, Jr., of Wilmington, Del., and Milford K. Smith and Charles Marro, both of Rutland, Vt., for H. E. Odell, a claimant.

LEAHY, District Judge.

The trustee in bankruptcy seeks to have the Commissioner's report confirmed in all respects. The five matters in issue are (1) the wage claim of Harley E. Odell, (2) the wage claim of Donald Murray, (3) a surcharge against the trustee in the amount of $840.86 for the balance due from an alleged sale of certain marble, (4) another surcharge in the amount of $301.46 for unauthorized disbursements, and (5) whether the trustee should be personally liable for the entire expenses of these proceedings.

■ I. Odell claim. The Commissioner recommended that claimant be allowed $1,170.35 representing payments of $10 per week from January 7, 1936 to April 7, 1938 (less a credit of $62.65 already received) for services rendered the estate as watchman and caretaker of the plant and quarry. In the consolidated account filed by the trustee it is recommended that Odell receive merely an additional $370. This matter arises out of a conflict of testimony between the trustee's attorney and Odell. One says he was hired upon a specific basis. The other denies it. The Commissioner's recommendation for payment of the item was bottomed on a quantum meruit basis. While it may be said that the evidence before the Commissioner justified his finding on a quantum meruit basis, it must not be overlooked that we have only $4,363.31 to go the round for payment of all administrative expenses. Absent a finding of a specific contract between the trustee and Odell, I must reduce the Commissioner's award. Hence, I allow this claimant $850.

■ II. Murray claim. The Commissioner recommended further payment for services rendered the estate by claimant as a part-time watchman and manager in liquidation. The trustee in his consolidated account reports $400 due Murray.

The Commissioner's recommendation includes the payment of $6 per week to Murray for the period from April 15, 1938 to April 8, 1941. It appears that this amount was specifically agreed to by Murray and the trustee in reorganization. It comes to approximately $936. In addition, the Commissioner recommended an additional $10 per week for additional services rendered and $1.50 per week additional for office work done by claimant throughout the period. Claimant having already received $1,686.36, the Commissioner's recommendation calls for a remainder payment of $1,043.64. This, again, is based on a quantum meruit. The bankruptcy trustee does not object to this payment. He states that while it is his primary duty to secure as much money as possible for the creditors, nevertheless, he is fairly forced to the conclusion that practically all the work done in connection with the management of the debtors during the period in question was performed by Murray.

The evidence amply supports the views of the Commissioner and the trustee in bankruptcy. But, here again, we must cut the coat according to the cloth. Murray is awarded $950.

■ In passing, I wish to record that there is no evidence to sustain the charge of the attorney for the trustee in reorganization that Murray retained money of the debtor without authority. The evidence, on the contrary, shows that Murray was permitted to retain money from sales of property to apply against his claim for services. This is deplorable practice. All disbursements should be made through a trustee's account so that a proper record may be left. However, I reject anything which questions the honesty of the claimant. On June 25, 1941—a year before the Commissioner was appointed—claimant filed with the trustee in reorganization a complete accounting as liquidation manager.

■ III. Surcharge item of $840.86. This involves a dispute over the quantity of certain marble sold by the trustee to the Jerome A. Jackson Company. The Commissioner found that $108.40 was still owing on one lot of marble sold. An additional six loads were sold by the trustee between October 4, 1928 and April 11, 1939 aggregating $732.46 which the trustee apparently never collected. Thus, the Commissioner recommended a surcharge of $844.86.

The evidence of the sales is vague and confusing. The last check received from the purchaser, dated September 30, 1940, bears the notation that it was for payment in full. The trustee accepted it, according to his attorney, in full settlement of a certain dispute existing between the trustee

and the purchaser as to the amount owed. Here, again, neither the trustee nor his attorney sought authority from the court either to make the original sales or to compromise the disputed claim. I shall interpret the evidence in the light most favorable to the trustee, i.e., that the claim was compromised. The surcharge will not, then, be imposed.

■ IV. Surcharge item of $301.46. This recommendation is based on disbursements made for Colonial Marble Co., Inc., by use of assets of Northern Marble Corporation. Colonial was the holding company of Northern. There was no technical consolidation, or a finding of necessity therefor. However, in the same cavalier fashion that other matters were handled, both companies were considered as one, and the estates administered as such. It is significant that not a single creditor or stockholder or any party in interest of either company ever brought these matters to the court's attention. Under the unusual circumstances of this case, I believe the trustee was attempting to do what he thought proper. The confusion which has existed in this case throughout is the direct result of the trustee and his attorney failing to follow traditional procedures in reorganization. Failing to find bad faith, the surcharge will not be imposed.

■ V. Trustee's liability for the expenses of this proceeding. When this cause first came to my attention in June of 1942, I was alarmed at the way the whole matter had been administered. After the Commissioner's report was filed, it was palpably shocking to observe the ineptness of the way these proceedings were carried out. The trustee's account—which was what prompted me to appoint the Commissioner —was neither accurate nor proper. I shall not pause to recite in detail its many omissions. True, the debtors were practically moribund at the time these proceedings were instituted. It was difficult to translate the few assets into cash. There was

lacking, I think, that financial background which so often stimulates attorneys and trustees to do a good job, knowing that they will be fairly rewarded. But, if the trustee and his attorney realized in the early stages of the cause that the effort was not worth their time, they were at full liberty to resign. It is well established law that a trustee and his attorney under some circumstances may forfeit all right to compensation. However, I do not think the sins of omission or commission of the trustee and his attorney have been so mortal as to exclude them from all compensation. Each of them will be allowed $100. Neither shall I impose on the trustee the costs of these proceedings which, as he well knows, are substantial.

■ In all other respects, the report and recommendations of the Commissioner are approved with one exception. The Commissioner recommends payment of the claim of James Smith for services rendered to the trustee in reorganization in the amount of $36.60. This is allowed. The Commissioner has filed, however, a supplement to his report wherein he recommends an additional payment of $144.40 to Smith for services rendered from July 1, 1940 to March 26, 1941. The recommendation will be rejected. The debtors were found insolvent on July 2, 1940 and, after a reference to the referee, the trustee in bankruptcy was named. The alleged services fall within the period of administration of the trustee in bankruptcy. The Smith claim for $144.40 should, therefore, be filed and passed on in the bankruptcy proceedings, if the time for filing such claim has not expired.

The trustee in bankruptcy may submit an order containing provisions for the payment of the administration expenses mentioned in the Commissioner's report, for an allowance to the Commissioner, for the payment of the costs of these proceedings, and with a direct provision that the trustee in reorganization turn over any balance then remaining to the trustee in bankruptcy.